UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE M. FLESZAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09-cv-2247 |
| v. ) | |
| ) | Judge John W. Darrah |
| AMERICAN MEDICAL ASSOCIATION, ) | |
| AMERICAN MEDICAL ASSOCIATION ) | |
| PENSION PLAN, and ) | |
| DR. MICHAEL D. MAVES, Administrator ) | |
| of the American Medical Association ) | |
| Pension Plan, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Janice M. Fleszar, filed an Amended Complaint against Defendants, American Medical Association ("AMA"), American Medical Association Pension Plan (the "Pension Plan"), and Plan Administrator, Dr. Michael D. Maves (collectively, "Defendants"). The Complaint alleges discrimination, failure to accommodate, and retaliation under the American with Disabilities Act ("ADA"); violations of the Employee Retirement Income Security Act ("ERISA"); and state-law claims of intentional infliction of emotional distress and retaliatory discharge.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons stated below, the Motion is granted in part and denied in part.

## BACKGROUND

The following facts are alleged in Fleszar's Amended Complaint and are accepted as true for purposes of resolving Defendants' Motion to Dismiss. Fleszar began working for the AMA in 1980 and became a participant in the Pension Plan in 1985. (Am. Compl. ¶¶ 8, 9.) In 1991, the AMA terminated Fleszar as part of a downsizing. (Am. Compl. ¶ 10.)

On January 13, 1992 – less than a year after being laid off – the AMA rehired Fleszar part time. (Am. Compl. ¶ 11.) The AMA and Fleszar entered into a written agreement dated March 16, 1992, with an effective date of January 13, 1992 (the "March 16 Agreement"). (Am. Compl. ¶ 12.) The March 16 Agreement provided that Fleszar would serve "as an independent contractor and not as an employee" and that, "as an independent contractor, she is not eligible for any of the fringe benefits due AMA employees." (Ex. 1 to Am. Compl. at ¶¶ 1, 8.) Notwithstanding the language in the March 16 Agreement, Fleszar was an employee by virtue of the fact that she was supervised by AMA personnel, who had the right to direct or control the manner in which her services were performed, and the fact that she used the AMA's equipment and worked on the AMA's premises. (Am. Compl. ¶ 13.) Also, at the time Fleszar was rehired, AMA representatives orally promised to credit her with service for purposes of the Pension Plan for the time she was laid off in 1991 and 1992. (Am. Compl. ¶ 17.)

Fleszar's part-time contract expired on August 31, 1992; she was hired full time on September 1, 1992, and signed a separate employment agreement. (Am. Compl. ¶¶ 19, 20.)

2

In 1996, Fleszar was diagnosed with Crohn's Disease. (Am. Compl. ¶ 24.) She also suffered from other medical problems, including heart palpitations, exhaustion, elevated blood pressure, chronic migraine headaches, pain, weakness, tingling in extremities, and upper-respiratory problems. (Am. Compl. ¶ 25.) These physical conditions caused Fleszar to suffer periodic episodes where she took time off from work. (Am. Compl. ¶ 26.) After returning from a medical leave, Fleszar requested and received an accommodation from her supervisor in the form of restructuring various job responsibilities to prevent exacerbation of her medical conditions. (Am. Compl. ¶ 27.)

Beginning in 2004, Fleszar experienced a "marked change in treatment by her supervisors and other AMA personnel," which included diminishing her role in the department, reassigning her job responsibilities, ignoring her, and showing irritation with her questions. (Am. Compl. ¶ 38.) Fleszar's job was downgraded; she was assigned extra work that was the responsibility of those in higher positions; she was asked to take on, make changes in, and re-do assignments for no apparent reason; she was passed over for promotions; her office was moved to a less desirable location; she was not given the same opportunity as other employees to participate in performance improvement programs; and she was unfairly disciplined. (Am. Compl. ¶ 92.)

On February 20, 2007, Fleszar received a written warning from AMA regarding unplanned absences and failure to complete assignments. (Am. Compl. ¶ 63.) On April 4, 2007, Fleszar was put on probation. (Am. Compl. ¶ 64.) On April 27, 2007, Fleszar filed a charge with EEOC, claiming she has been discriminated against on the basis of her disability. (Am. Compl. ¶ 65 & Ex. 12.) After she filed the charge, Fleszar's

treatment by the AMA "further degraded." (Am. Compl. ¶ 66.) And on August 24, 2007, Fleszar was terminated. (Am. Compl. ¶ 71.)

Fleszar then filed a second charge with the EEOC, claiming that her discipline and discharge were in retaliation for her prior charge. (Am. Compl. ¶ 80 & Ex. 13.) On January 8, 2009, the EEOC issued a Dismissal and Notice of Rights, dismissing both of Fleszar's charges. (Am. Compl. ¶ 81 & Ex. 14-15.) Fleszar subsequently filed a *pro se* Complaint. She later obtained counsel and filed an Amended Complaint, which is the subject of the instant Motion to Dismiss.

Fleszar's Amended Complaint also brings claims under ERISA. In March 2003, Fleszar received an Estimated Statement of Accrued Benefits, showing that the Pension Plan credited her with 18 years of service. (Am. Compl. ¶ 29.) Fleszar had also received several other AMA documents, showing that she was credited with a 1981 hire date. (Am. Compl. ¶ 35.) After Fleszar contacted her human resources department to obtain some projected retirement figures, however, Fleszar was informed that her service credit had been calculated in error and that she only had 16.416 years of service for purposes of the Pension Plan. (Am. Compl. ¶¶ 32-34.) The difference represents the period of time during which Fleszar had been laid off and employed part time.

In March 2005, Fleszar made a formal claim for benefits to the Pension Plan regarding the calculation of her years of credited service. (Am. Compl. ¶ 41.) During the claim process, AMA produced to Fleszar an agreement dated January 13, 1992 (the "January 13 Agreement"). (Am. Compl. ¶ 14.) The January 13 Agreement was for the

same position and the same time period as the March 16 Agreement but included the following language not found in the March 16 Agreement:

> It is expressly understood and agreed that as a specified-term employee the <u>Employee is not entitled to any fringe benefits, including,</u> without limitation, health insurance, disability insurance, term life insurance, tuition reimbursement, <u>pension plan</u> or 401(k) plan provided to regular AMA employees, except Employee shall be entitled to Business Travel Accident Insurance.

(Am. Compl. ¶ 14 (citing Ex. 2 to Am. Compl.) (emphasis added in Am. Compl.).) The January 13 Agreement contains a falsified version of her signature, and the March 16 Agreement is the only operative agreement that was in effect during the time she was working part time. (Am. Compl. ¶¶ 15-16.)

In June 2005, the Pension Plan Committee denied Fleszar's claim. (Am. Compl. ¶ 42.) She then appealed the denial to the Pension Plan Administrator, Dr. Michael D. Maves, who affirmed the decision on September 29, 2005. (Am. Compl. ¶¶ 43, 47.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly* 550 U.S. at 555).

"Where the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (*Iqbal*). In order for a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations." *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556).

The Seventh Circuit has summarized the requirements of a well-pleaded complaint as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Id.* at 581.

"A motion to dismiss is appropriate for determining whether a complaint, on its face, is barred by a statute of limitations." *ABF Capital Corp. v. McLauchlan*, 167

F.Supp.2d 1011, 1013 (N.D. Ill. 2001). The Court may consider all exhibits attached to or referenced in the Amended Complaint. *See* Fed. R. Civ. P. 10(c); *Ventura Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 430 (7th Cir. 1993) (*Ventura*).

The decision whether to grant or deny a motion for leave to amend a complaint is within the sound discretion of the district court; and such motions "[are] appropriately denied when, among other reasons, the amendment would be futile." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002) (citations omitted).

## ANALYSIS

Defendants move to dismiss all counts in Fleszar's Amended Complaint. Each count is addressed separately below.[1]

*Count 1 – Discrimination in Violation of the
Americans with Disabilities Act*

Count 1 alleges that the AMA unlawfully discriminated against Fleszar in violation of the ADA. Defendants argue that certain allegations in Count 1 should be dismissed because Fleszar did not include them in her EEOC charge and, thus, failed to exhaust her administrative remedies.

Although a plaintiff can be barred from bringing a claim that has not been raised in an EEOC charge, such a claim may be allowed if it is "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp. Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (*Green*). To determine whether a claim is reasonably related to an allegation, the

---

[1] Defendants also request, in the alternative, an entry of judgment in their favor pursuant to Federal Rule of Civil Procedure 12(c). Because the pleadings are not yet closed, this request is premature. *See* Fed. R. Civ. P. 12(c).

7

claim and the EEOC charge "must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (*Cheek*).

Fleszar's first EEOC charge was filed on April 27, 2007. Fleszar attached a fourteen-paragraph statement, detailing her charge of discrimination. Nowhere in those fourteen paragraphs does Fleszar specifically allege that the AMA discriminated against her by "[p]assing over her for promotions" or "[n]ot giving her the same opportunity as other employees to participate in a performance improvement program," as she does in her Amended Complaint. (Am. Compl. ¶ 92 (d) & (h).)

Plaintiff nonetheless argues that these allegations are reasonably related to the charges in her EEOC report, where she notes her negative performance evaluation and alleges that similarly situated colleagues were given a higher grade and compensation while she "was, effectively, downgraded." (Am. Compl. Ex. 12 ¶¶ e, k). Giving Fleszar the "significant leeway" to which she is entitled as one who files a *pro se* EEOC charge, both allegations "describe similar conduct and implicate the same individuals" and could "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. Accordingly, Fleszar's administrative remedy has been exhausted as to these allegations.

The allegation regarding Fleszar's termination is more problematic. Because she was still employed at the time her first EEOC charge was filed, the allegations in Fleszar's first EEOC charge cannot be related to her termination. Her second charge, filed on June 13, 2008, claimed discrimination based on "Retaliation" but not

"Disability." (Am. Compl. Ex. 14.) And it specifically alleges discrimination "based on retaliation for engaging in a protected activity."

But even if Fleszar's allegations regarding her termination are disregarded, Count I is sufficient to survive a motion to dismiss. Despite Defendants' arguments to the contrary, Fleszar has properly satisfied the applicable pleading standard. Fleszar has over 29 paragraphs and subparts in her Amended Complaint regarding Count I, as well as 82 background paragraphs. She alleges that she suffered a variety of adverse employment actions in addition to her ultimate termination – including a downgrade of her job, being assigned extra work that was the responsibility of those in higher positions, being asked to take on, make changes in and re-do assignments for no apparent reason, getting passed over for promotions, having her office relocated to a less desirable location, not being offered the same opportunity as other employees to participate in performance improvement programs, and being disciplined. (Am. Compl. ¶ 92.)

Taken together, these actions are sufficient to plead an adverse employment action for purposes of the ADA.[2] *Collins v. State of Ill.*, 830 F.2d 692, 704 (7th Cir. 1987). Fleszar has given Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Defendants' Motion to Dismiss is denied as to Count 1.

---

[2] Defendants did not contest Fleszar's allegations that she was disabled within the meaning of the ADA.

*Count 2 – Failure to Accommodate in Violation of the
Americans with Disabilities Act*

Count 2 alleges that the AMA failed to accommodate Fleszar's disability, in violation of the ADA. Defendants argue that Fleszar failed to exhaust this claim as well. Unlike the allegations in Count 1, the allegations in Count 2 are not reasonably related to the allegations in either of Fleszar's EEOC charges stated above.

"[A] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. . . . Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Green*, 197 F.3d at 898.

Fleszar acknowledges that she did not use the words "accommodate" or "failure to accommodate" in her EEOC charges. Nonetheless, she asserts that the underlying facts alleged in her first EEOC charge support a claim for failure to accommodate, citing the following allegation in particular: "Since January 2007, I have been required to perform job functions that are part of the job description of my non-disabled co-worker who is in a higher grade . . . ." (Pl. Opp'n Br. 3 (citing Am. Compl. Ex. 12 at ¶ h).) Fleszar then argues that *Mudgett v. Centegra Health Sys., Inc.*, No. 04 C 6212, 2006 WL 1806390 (N.D. Ill. June 27, 2006) (*Mudgett*), indicates that her failure-to-accommodate claims should be deemed exhausted.

In *Mudgett*, the plaintiff never used the words "failure to accommodate" in her EEOC charges; yet, the court determined that the facts she had alleged were enough to exhaust her claim. *Id.* at *4. But the plaintiff in that case had alleged specific instances

10

of her employer's failure to accommodate her disability in her EEOC charge. *Id.* Specifically, Mudgett alleged that her employer suspended her because of her health condition, that she was required to undergo treatment before returning to work (which led her to be unable to come back to work), and that she was told she would have to work in a different department. *Id.* Fleszar, by contrast, merely claims she was required to perform tasks that should have been performed by her non-disabled, higher-grade coworker. That allegation plainly goes toward a claim of discrimination, not a claim of failure to accommodate. Fleszar did not include any failure-to-accommodate claims in her EEOC charges; nor did she allege that she was denied any reasonable accommodation. Accordingly, Count 2 is dismissed with prejudice.

*Count 3 – Retaliation in Violation of the Americans with Disabilities Act*

Count 3 alleges that the AMA retaliated against Fleszar for filing her 2007 EEOC charge. Defendants argue that Count 3 should be dismissed for failing to satisfy the applicable pleading standard and because the alleged conduct argued by Fleszar does not rise to the level of an actionable adverse employment action.

In Fleszar's second EEOC charge, which was filed after she was discharged from her employment with the AMA, Fleszar states as follows:

> I began my employment with Respondent in February 1991. On April 27, 2007, I filed a charge of disability discrimination against Respondent. Thereafter, I was disciplined and subjected to different terms and conditions of employment. On August 22, 2007, I was discharged. I believe that Respondent discriminated against me based on retaliation for engaging in a protected activity, in violation of the Americans with Disabilities Act of 1990.

11

(Am. Compl. Ex. 14.) These allegations are generally repeated in Fleszar's Amended Complaint, in which she also alleges that she was meeting her employer's legitimate expectations and that similarly situated employees who did not exercise rights under the ADA were not subject to these adverse employment actions. (Am. Compl. ¶¶ 110-115.)

At a minimum, termination qualifies as an adverse employment action. For purposes of a motion to dismiss, these allegations are sufficient to state a claim for relief. Defendants' Motion to Dismiss is denied as to Count 3.

*Count 4 – ERISA § 502(a)(1)(B) – Denial of Benefits*

Count 4 alleges that Defendants violated ERISA by wrongfully denying Fleszar of years of credited services under the Pension Plan. The Defendants argue that Count 4 is barred by the statute of limitations set forth in the Pension Plan itself.

By an amendment dated March 16, 2005, the ERISA plan added a one-year statute of limitations for actions relating to a claim for benefits:

> *Statute of Limitations for Actions under the Plan.* Except for actions to which the statute of limitations prescribed by Section 413 of ERISA applies, . . . no legal or equitable action relating to a claim for benefits under Section 502 of ERISA may be commenced later than 1 year after the claimant receives a final decision from the Executive Vice President in response to the claimant's request for review of the adverse benefit determination (or, if later, 1 year after the effective date of this provision, which is March 16, 2005).

(Def. Br. Ex. A.)[3] Contractual limitations periods in ERISA plans will be enforced unless they are unreasonable. *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 874-75 (7th Cir. 1997).

---

[3] Although Fleszar attached a copy of the American Medical Association Pension Plan to her Amended Complaint, that version is "As Amended Effective

12

In response to Defendants' Motion to Dismiss, Fleszar now asserts that her cause of action actually accrued on January 7, 2005, when the Pension Plan initially rejected her claim. Because the statute-of-limitations amendment was added March 16, 2005, Fleszar argues that her claim is governed by the general ten-year statute of limitations applicable to actions for breach of a written contract. This argument fails for three reasons.

First, Fleszar's argument necessarily relies on materials not referenced in the Amended Complaint. In the Amended Complaint, Fleszar alleges that she raised the issues regarding her credited time with AMA personnel and then made a formal claim for benefits in March 2005. (Am. Compl. ¶¶ 36, 41.) She also alleges that her claim was denied in June 2005, that she appealed that decision, and that the Pension Plan Administrator affirmed the denial on September 29, 2005. (Am. Compl. ¶¶ 42, 43, 47.) Fleszar now argues that her claim accrued when she received a letter from AMA's legal counsel in January 2005. Because this letter is not referenced in any manner in Fleszar's Amended Complaint, it cannot now be considered to defeat a motion to dismiss. *See, e.g., Blau v. Harrison*, No. 04 C 6592, 2006 WL 850959, at *1 (N.D. Ill. Mar. 24, 2006) (striking material not referenced in complaint for purposes of Rule 12(b)(6) motion). (But even if this were not the case, this claim must be dismissed as follows.)

---

January 1, 2005." Defendants submitted an updated version of the Pension Plan, which included the Amendment dated March 16, 2005. Fleszar has not challenged the authenticity of the Amendment. Because the Pension Plan is referenced in Fleszar's Amended Complaint and is central to Fleszar's ERISA claims, it may properly be considered in its entirety in resolving this Motion to Dismiss. *See Ventura*, 987 F.2d at 430.

Second, case law holds that claims for benefits accrue when the plan denies a formal appeal. *See, e.g., Young v. Verizon's Bell Atl. Cash Balance Plan*, No. 05 C 7314, 2009 WL 3677350, at *32 (N.D. Ill. Nov. 2, 2009) ("In this Circuit, an ERISA plaintiff is required to exhaust all administrative remedies before bringing an action challenging a denial of benefits. Therefore, an ERISA action logically accrues [for statute of limitations purposes] after the final administrative appeal is denied in writing.") (citations omitted); *Peltzer v. Life Ins. Co. of N. Am.*, No. 01 C 2585, 2002 WL 1858786, at *2 (N.D. Ill. Aug. 13, 2002) (following majority of circuits and holding that applicable plan was the one in effect at the time the plaintiff's appeal was denied, not the one in effect at the time of the initial denial of benefits). Even the case upon which Fleszar purports to rely held that the critical moment when the plan "clearly and unequivocally" rejected a claim for a pension occurred when the plaintiff's formal appeal was denied. *See Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir. 1996).

Third, the plain language of the March 16 Amendment does not leave open the possibility of a different statute of limitations for any claim that would have accrued before the Amendment. Under the plain text of the Amendment, as of March 16, 2005, any claimant who had not yet received a final decision from the Executive Vice President in response to a request for review would be required to bring any legal action within one year of that subsequently rendered decision. Anyone who had received a decision before the amendment was given one year from the effective date of the Amendment. Thus, the March 16 Amendment applied to all actions going forward.

14

Fleszar had not yet made a formal claim for benefits as of March 16, 2005, when the Amendment took effect; and the final decision on her claim was not issued until September 29, 2005. The one-year statute of limitations ran well before Fleszar filed her Complaint on April 13, 2009. Therefore, her claim for benefits is time barred. Count 4 is dismissed with prejudice.

*Count 5 – ERISA § 502(a)(2) – Breach of Fiduciary Duty*

Count 5 alleges that Dr. Maves breached his fiduciary duty under ERISA by providing and relying upon a copy of an agreement that Fleszar claims contains a forged version of her signature.

For a claim of breach of fiduciary duty, the statute of limitations is the earlier of "six years after . . . the date of the last action which constituted a part of the breach or violation" or "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. In her brief, Fleszar concedes that her claim for breach of fiduciary duty under ERISA is barred by the three-year statute of limitations as interpreted by the Seventh Circuit. (Pet. Br. at 11.) Count 5 is dismissed with prejudice.[4]

*Count 6 – ERISA – Equitable Estoppel*

Count 6 alleges that Fleszar detrimentally and reasonably relied on Defendants' knowing verbal misrepresentations about Fleszar's years of service and that those

---

[4] Defendants also argue that Fleszar's claim for denial of benefits against the AMA or Dr. Maves is not against the proper defendants because the Plan states the administrator of the Pension Plan shall be the Plan Committee. (Compl. at Ex. 5, § 12.1.) Because Count 5 is dismissed, this argument need not be considered.

15

misrepresentations were confirmed in writing multiple times. Again, Defendants argue that this claim is barred by the Pension Plan's statute of limitations.

According to the terms of the Pension Plan, "no other legal or equitable action involving the plan may be commenced later than 2 years from the time the person bringing an action knew, or had reason to know, of the circumstances giving rise to the action." (Def. Br. Ex. A at § 15.8.) According to Fleszar's Complaint, AMA first informed her in May 2003 that she was not credited with service from the time she was laid off. (Am. Compl. ¶ 34.) At the latest, Fleszar knew all of the circumstances giving rise to this action by September 29, 2005, when her appeal regarding her service credit was denied. Yet Fleszar did not commence her action until 2009, well over two years after she first knew of the circumstances that gave rise to this action.

Again, Fleszar argues that the statute of limitations set forth in the March 16, 2005 Amendment does not apply to her because her claim accrued prior to the amendment. (Pet. Br. at 13.) For reasons already stated in regards to Count 4, this argument is not persuasive; Count 5 is dismissed with prejudice.

*Count 7 – Intentional Infliction of Emotional Distress
under Illinois Common Law*

Count 7 is brought against the AMA, alleging intentional infliction of emotional distress. Defendants argue that Count 7 should be dismissed for failure to state a claim under Illinois common law.

In order to establish a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must show: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) . . . that defendant's conduct was such that defendant knew that severe emotional distress would be certain or substantially certain to result." *Plocar v. Dunkin' Donuts of Am., Inc.*, 431 N.E.2d 1175, 1179 (Ill. App. Ct. 1981).

Fleszar alleges that the AMA repeatedly engaged in extreme and outrageous conduct toward her, including a colleague's yelling at her to get out of his office, an acting director's referring to Fleszar's work areas as the "low rent district," suggesting she tampered with documents, and being escorted from her office in front of her coworkers, all of which caused severe emotional distress. (Am. Compl. ¶¶ 144, 148.)

Defendants argue these types of claims do not rise to the level of extreme and outrageous behavior required under Illinois common law because "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not ordinarily qualify as extreme and outrageous behavior. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). However, Fleszar also alleges that "the AMA either intended that its conduct inflict severe emotional distress upon Ms. Fleszar, or knew that there was a high probability that its conduct would cause severe emotional distress—particularly in light of her disabilities, which the AMA knew were exacerbated by the stress." (Am. Compl. ¶ 147.) Construing all allegations in Fleszar's favor, the allegations in Count 7 are sufficient to survive a motion to dismiss; and Defendants' Motion to Dismiss is denied as to Count 7.

*Count 8 – Retaliatory Discharge
under Illinois Common Law*

Count 8 alleges that the AMA committed the common-law tort of retaliatory discharge. Defendants argue that Count 8 fails to state a claim for relief.

Under Illinois law, "[a] valid claim for retaliatory discharge requires a showing that an employee has been (1) discharged; (2) in retaliation for employee's activities; and (3) that the discharge violates a clearly mandated public policy." *Geary v. Tetular Corp.*, 793 N.E.2d 128, 133 (Ill. App. 2003). Illinois courts have only applied retaliatory discharge to cases where the discharge stems from a claim under the Workers' Compensation Act or when the discharge is for "whistle-blowing" against the employer. *Id.*

In her Amended Complaint, Fleszar states she "was discharged by the AMA in retaliation for her reporting perceived violations of state and federal law to AMA management and to state and federal agencies." (Am. Compl. ¶ 151.) Although the Complaint does not allege what specific violations were reported, Fleszar contends Defendants are aware that she has notified the United Stated Department of Labor and the EEOC of various violations of federal law such that Defendants have notice of the claims against them. But Federal Rule of Civil Procedure 8(a)(2) requires that the complaint itself provide notice to the defendants. A plaintiff cannot correct a pleading deficiency by providing details in a brief opposing a motion to dismiss. *See Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1057 (7th Cir. 1988). Moreover, to the extent Fleszar's claim is based on complaints she made about her own alleged mistreatment, that claim is not actionable under Illinois law. *See, e.g., Sutherland v.*

18

*Norfolk S. Ry. Co.*, 826 N.E.2d 1021, 1027 (Ill. App. Ct. 2005) (holding that employee "cannot qualify as a whistleblower under Illinois law simply because he or she reported his or her own injury and the condition that caused it".) However, unlike Fleszar's other dismissed counts, it is not clear that Count 8 could not be amended to state a cause of action under Illinois law. Therefore, Count 8 is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Fleszar's Amended Complaint is granted in part and denied in part. Counts 2, 4, 5, and 6 are dismissed with prejudice; and Count 8 is dismissed without prejudice. Consistent with Federal Rule of Civil Procedure 11, Fleszar may file a second amended complaint to address the pleading deficiencies noted with regard to Count 8 within 28 days of the entry of this Order.

Date: March 11, 2010

JOHN W. DARRAH
United States District Court Judge

19